**Carl LYKINS, Petitioner,**

v.

**DIRECTOR, OFFICE OF WORKERS' COMPENSATION PROGRAMS, UNITED STATES DEPARTMENT OF LABOR, Respondent.**

No. 86–3127.

United States Court of Appeals, Sixth Circuit.

Submitted April 28, 1987.

Decided May 20, 1987.

Lewis Seiler, Cincinnati, Ohio, for petitioner.

Benefits Review Bd., U.S. Dept. of Labor, J. Michael O'Neill, Office of the Solicitor, U.S. Dept. of Labor, Brian E. Peters, Washington, D.C., for respondent.

Before LIVELY, Chief Judge, and ENGEL and BOGGS, Circuit Judges.

PER CURIAM.

Carl Lykins, a former coal miner petitions for review of a decision of the Benefits Review Board denying his claim for "black lung" benefits under the Federal Coal Mine Health and Safety Act of 1969, as amended, 30 U.S.C. § 901, et seq. Lykins contends that he was denied the benefit of a presumption of total disability due to pneumoconiosis to which he was entitled.

**I.**

The administrative law judge (ALJ) who conducted a hearing on petitioner's claim found that Lykins had ten years and nine

months of coal mine employment. An applicable regulation, 20 C.F.R. § 727.203(a) provides that a person who engaged in coal mine employment for at least ten years "will be presumed to be totally disabled due to pneumoconiosis," if certain medical requirements are met. Subsection 1 is pertinent to our inquiry:

(1) A chest roentgenogram (X-ray), biopsy, or autopsy establishes the existence of pneumoconiosis.

20 C.F.R. § 727.203(a)(1).

The ALJ found that petitioner's X-ray evidence did not establish the existence of pneumoconiosis. Petitioner also submitted biopsy evidence which he relied upon to establish the existence of pneumoconiosis. However, the ALJ did not treat this evidence under § 727.203(a)(1). Instead, he discussed the biopsy evidence only in relation to § 727.203(a)(4), which creates a presumption on the basis of "other medical evidence ... [that] establishes the presence of a totally disabling respiratory or pulmonary impairment." The ALJ considered the biopsy evidence to be inconclusive because the pathologist who examined the tissue did not refer to any degree of impairment. The Benefits Review Board affirmed the ALJ's denial of benefits.

## II.

Petitioner argues that the ALJ erred in its treatment of both X-ray and biopsy evidence.

### A.

■ Lykins maintains that the ALJ erroneously considered a negative rereading of an X-ray that was originally read as positive for pneumoconiosis. He asserts that the X-ray presumption under § 727.-203(a)(1) is triggered by the presence of a single positive X-ray, and that he cannot be deprived of the presumption on the basis of a subsequent negative reading of the same X-ray. Resolution of this issue is controlled by our recent decision in *Back v. Director*, 796 F.2d 169 (6th Cir.1986). In the present case there were a number of X-rays in evidence, taken over a period of six years, which produced conflicting results. The ALJ found that the most persuasive evidence was the opinion of a "B–Reader" who reread as negative for pneumoconiosis an X-ray that had been read earlier as positive by a board certified radiologist who did not have the additional qualifications of a B–Reader. In *Back* we held that a genuine conflict is present when a serial rereading of a positive X-ray produces a later negative reading by a qualified reader. *Id.* at 172. When such a conflict appears, it is the responsibility of the ALJ to resolve it. The finding that the X-ray evidence in this case did not trigger a presumption of total disability due to pneumoconiosis is supported by substantial evidence.

### B.

■ A pathologist summarized petitioner's biopsy results as follows:

The lesion is definitely a hyalinized granuloma in which ample of [sic] arthracotic pigment is present. Under polarized light a few small birefrigent crystals are present.

According to the accompanying report, microscopic examination disclosed "a well delineated, encapsulated structure which is composed of hyalinized fibrous tissue, containing large amounts of anthracotic pigment." The central portion was described as showing "considerable calcification."

According to Stedman's Medical Dictionary, Fifth Unabridged Lawyers' Edition, granuloma is an "indefinite term applied to nodular inflammatory lesions, usually small or granular...." Hyalinized refers to substances that are glassy, homogeneous and translucent in appearance, which occur in degeneration. The significant pathological reference is to anthracotic pigment. Anthracotic is defined as "characterized by anthracosis." Anthracosis, in turn, is defined as "Collier's or miner's lung, melanedema; accumulation of carbon from inhaled smoke or coal dust in the lungs. See also pneumomelanosis." Pneumomelanosis is defined as "a blackening of the lung tissue from the inhalation of coal dust or other black particles."

We believe that the ALJ erred in failing to consider this biopsy report under § 727.-203(a)(1). Anthracosis is certainly related to pneumoconiosis, and the report of the pathologist may meet the medical requirement of a biopsy that establishes the existence of pneumoconiosis. Upon remand, the parties may produce further evidence and authority on the issue of the standard for the § 203(a)(1) biopsy presumption as well.

The decision of the Benefits Review Board is vacated and the case is remanded for further proceedings.