884 F.2d 581
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Cletis WELLS, Petitioner,
v.
BLUE DIAMOND COAL COMPANY; and Director, Office of Workers'
Compensation Programs, United States Department of
Labor, Respondents.
 No. 88-3747.
 United States Court of Appeals, Sixth Circuit.
 Aug. 29, 1989.
 
 Before RALPH B. GUY, Jr. and RYAN, Circuit Judges and DAVID D. DOWD, Jr., District Judge*.
 PER CURIAM.
 
 
 1
 Cletis Wells (Wells) appeals from the denial of black lung benefits by the Benefits Review Board (Board), United States Department of Labor. Wells filed his claim for benefits pursuant to Title IV of the Federal Coal Mine Health and Safety Act of 1969, as amended, 30 U.S.C. Sec. 901 et seq. Wells' claim for benefits was ultimately denied based upon a determination by the Administrative Law Judge (ALJ) that the medical evidence of record failed to satisfy any of the four medical criteria of 20 C.F.R. Sec. 727.203(a), and thus did not invoke the interim presumption of that section that Wells was totally disabled due to pneumoconiosis arising out of coal mine employment. On appeal, Wells asserts the ALJ's determination that he failed to invoke the presumption of 20 C.F.R. Sec. 727.203(a) is not supported by substantial evidence. Upon review of the record, we conclude that the ALJ's finding that the medical evidence before him was insufficient to invoke the presumption of total disability due to pneumoconiosis arising out of coal mine employment is supported by substantial evidence in the record. Accordingly, the decision of the ALJ is affirmed.
 
 I.
 
 2
 Wells began working in the mines in 1954 when he was 17 years old. He was a miner during his entire working life until he quit the mines at 42 years of age. His last job in the mines was with Blue Diamond Coal Company (Blue Diamond) as a shuttle car operator. A shuttle car runs on rubber tires, has a hydraulic starter and is operated by hydraulic levers. Wells testified at the hearing before the ALJ that he quit working due to breathing and back problems.
 
 
 3
 Wells applied for black lung benefits on September 10, 1979, one month after ceasing work in the coal mine industry. The Department of Labor initially found Wells to be entitled to federal black lung benefits, however, this finding was challenged by Blue Diamond. Upon this challenge, Wells' claim was referred to an ALJ, who reversed the initial grant of benefits. Wells' motion for reconsideration was overruled, and he appealed to the Benefits Review Board, who affirmed the ALJ's decision.
 
 
 4
 The ALJ found that Wells had established 24 years of coal mine employment history. Based upon the finding that Wells had over 10 years of coal mine employment, the ALJ went on to consider whether Wells satisfied any of the four medical requirements of 20 C.F.R. Sec. 727.203(a).[1] If Wells satisfied any of these criteria, he would be presumed to be totally disabled due to pneumoconiosis arising out of coal mine employment.
 
 
 5
 An X-ray which "establishes" the existence of pneumoconiosis is necessary in order to trigger the presumption of total disability pursuant to 20 C.F.R. Sec. 727.203(a)(1). There were nine X-ray readings in the record for nine separate X-rays in the record before the ALJ. Those X-rays were interpreted by physicians who were "B" readers[2] as well as those who were not "B" readers, as well as the reading of one "B" reader, Dr. Brandon, were positive for pneumoconiosis. A number of readings by "B" readers, including the most recent readings, were negative for pneumoconiosis. The clear majority of readings by "B" readers were negative for pneumoconiosis.
 
 
 6
 The second means of invoking the interim presumption of 20 C.F.R. Sec. 727.203(a) is by way of pulmonary studies which "establish" chronic respiratory or pulmonary disease, as demonstrated by values which are equal to or less than certain specified values. 20 C.F.R. Sec. 727.203(a)(2). In this case, only a single pulmonary function study, performed by Dr. Clarke in 1979, produced qualifying results. Several pulmonary function studies performed in 1980, however, produced non-qualifying results.
 
 
 7
 The interim presumption of 20 C.F.R. Sec. 727.203(a) may also be invoked through blood gas studies which demonstrate an impairment in the transfer of oxygen from the lungs to the blood, as indicated by values which are equal to or less than certain specified values. 20 C.F.R. Sec. 727.203(a)(3). Of three blood gas studies before the ALJ, only the earliest produced qualifying values.
 
 
 8
 The last method of invoking the interim presumption of 20 C.F.R. Sec. 727.203(a) that is applicable to this case is through "other medical evidence" which establishes the presence of a totally disabling respiratory or pulmonary impairment. 20 C.F.R. Sec. 727.203(a)(4). Of the six medical reports in evidence before the ALJ, Dr. Clarke found Wells to be totally disabled for "all work in a dusty environment," Dr. Carey found Wells to be disabled in part due to chronic pulmonary disability and in part due to osteoarthritis, and Dr. Matheny found Wells to be totally disabled due to his "illnesses."[3] Dr. Powell and Cornish found no disabling pulmonary or respiratory impairment, and Dr. Anderson diagnosed Wells with category 1 pneumoconiosis but made no finding of disability.
 
 II.
 
 9
 The standard of review of the ALJ's decision is whether there is substantial evidence in the record to support the decision and whether the correct legal criteria was employed in reaching that decision. Ramey v. Kentland Elkhorn Coal Corp., 755 F.2d 485, 486 (6th Cir.1985). Substantial evidence is "more than a mere scintilla" of evidence sufficient to support a conclusion which a reasonable mind might arrive at. Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)).
 
 
 10
 Wells' primary argument on appeal is that a single positive X-ray reading by a "B" reader is sufficient to trigger a presumtion of total disability due to pneumoconiosis pursuant to 20 C.F.R. Sec. 727.203(a)(1). He therefore concludes that since the positive reading of Dr. Brandon, a "B" reader, was in the record before the ALJ, the ALJ erred by not concluding that Wells was entitled to the interim presumption of 20 C.F.R. Sec. 727.203(a) based on this single positive reading alone.
 
 
 11
 Wells further argues on appeal that the ALJ "chose to ignore" qualifying pulmonary function and blood gas studies in the face of more recent studies demonstrating no pulmonary or respiratory impairment, as well as ignoring medical reports rendered on behalf of plaintiff that plaintiff was totally disabled due to a respiratory or pulmonary impairment.
 
 
 12
 In Mullins Coal Co. v. Director, O.W.C.P., 108 S.Ct. 427 (1987), the Supreme Court held that while the interim presumption of 20 C.F.R. Sec. 727.203(a) may be invoked by a single item of qualifying evidence, there is nothing in the text or legislative history of the interim presumption that requires the presumption be invoked upon a single piece of qualifying evidence. Id. at 437-39. The ALJ is not required to postpone weighing the evidence before him until the rebuttal stage, but is entitled to weigh both the quality and quantity of the evidence before him when determining whether the presumption is to be invoked at all. Mullins Coal Co. v. Director, O.W.C.P., 108 S.Ct. at 434, n. 23.
 
 
 13
 With respect to Sec. 727.203(a)(1), the Supreme Court observed that "[j]ust as the ALJ must weigh conflicting interpretations of the same X-ray in order to determine whether it tends to prove or disprove the existence of pneumoconiosis, there would seem to be no reason why he must ignore all X-rays in a series except one." Mullins Coal Co. v. Director, O.W.C.P., 108 S.Ct. at 434 (footnote omitted). Accordingly, the Mullins Court specifically disapproved of the Fourth Circuit's view that a single positive X-ray necessarily invoked the presumption of 20 C.F.R. Sec. 727.203(a).
 
 
 14
 The Supreme Court's holding in Mullins that it is proper for the ALJ to weigh the evidence before him in determining whether the interim presumption is invoked in the first instance applies to any of the four criteria by which the presumption may be triggered. The case law in this Circuit is in harmony with the Supreme Court's view in Mullins. Conn v. White Deer Coal Co., 862 F.2d 591, 594 (6th Cir.1988); Riley v. National Mines Corp., 852 F.2d 197, 198-99 (6th Cir.1988); Creech v. Benefits Review Board, 841 F.2d 706, 708-09 (6th Cir.1988).
 
 III.
 
 15
 In light of Mullins, we find Wells' assertion that a single positive X-ray is sufficient to invoke the interim presumption of 20 C.F.R. 727.203(a) pursuant to Sec. 727.203(a)(1) not to be well-taken. In his Decision and Order, the ALJ discussed the single positive X-ray reading by a "B" reader, Dr. Brandon. The ALJ went on to conclude that, in the face of a clear majority of negative readings by "B" readers, which included the most recent X-ray evidence, the X-ray evidence before him was insufficient to invoke the presumption under Sec. 727.203(a)(1). We find that the ALJ employed the correct legal criteria in weighing all of the X-ray evidence before him at the invocation stage, and that his conclusion the evidence was insufficient to invoke the presumption under Sec. 727.203(a)(1) was supported by substantial evidence in the record.
 
 
 16
 We further find that Wells' assertion on appeal that the ALJ simply chose to "ignore" qualifying pulmonary function and blood gas studies to be simply incorrect. When discussing the pulmonary function and blood gas studies, the ALJ clearly acknowledged the existence of the qualifying studies. In reaching his conclusion that these qualifying studies were insufficient to invoke the presumption, the ALJ weighed the qualifying studies against more numerous and recent non-qualifying studies. As discussed above, a single qualifying study does not automatically and necessarily trigger the presumption. Rather, it is proper for the ALJ to weigh all of the studies before him to determine whether the presumption is invoked. In this case, while there were qualifying studies before the ALJ, there was substantial evidence in the record to support a conclusion to the contrary. Accordingly, we find the ALJ's conclusion that the pulmonary function and blood gas studies were insufficient to invoke the presumption under Sec. 727.203(a)(2) and (a)(3), respectively, to be supported by substantial evidence in the record.
 
 
 17
 Finally, Wells contends on appeal that the ALJ "ignored the medical reports rendered on behalf of the Claimant." We find this contention to be without merit. In his Decision and Order, the ALJ discusses each of the six medical reports, both favorable and unfavorable, which were submitted on the issue of whether the interim presumption was invoked based on "other medical evidence" establishing the presence of a totally disabling respiratory or pulmonary impairment. The ALJ clearly explained his reasons for concluding that the "favorable" reports were insufficient for invocation within the meaning of Sec. 727.203(a)(4). We find that these insufficiencies, as well as the medical reports which did not find Wells totally disabled as a result of respiratory or pulmonary impairment, provide substantial support for the ALJ's conclusion that Wells failed to invoke the interim presumption pursuant to Sec. 727.203(a)(4).
 
 
 18
 AFFIRMED.
 
 
 
 *
 The Honorable David D. Dowd, Jr., United States District Court, Northern District of Ohio, sitting by designation
 
 
 [1]
 A fifth alternative, 20 C.F.R. Sec. 727203(a)(5), involves death benefit claims and is not at issue in this case
 
 
 [2]
 A "B" reader is a physician whose proficiency in assessing and classifying X-ray evidence of pneumoconiosis has been established by successful completion of an examination developed by NIOSH
 
 
 [3]
 In his report of April 13, 1984, Dr. Matheny diagnosis of Wells consists of osteoarthritis, degenerative disc disease, herniated nucleus pulposus, emphysema, and pneumoconiosis