NOT RECOMMENDED FOR PUBLICATION
File Name: 26a0173n.06

No. 25-3517

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

FILED

Apr 17, 2026

KELLY L. STEPHENS, Clerk

STAR SERVICES CORPORATION, et al.,

    Petitioners,

v.

OWCP, et al.,

    Respondents.

)
)
)
)
)
)
)
)
)
)

ON PETITION FOR REVIEW
FROM THE BENEFITS REVIEW
BOARD

OPINION

Before: CLAY, McKEAGUE, and NALBANDIAN, Circuit Judges.

**CLAY, Circuit Judge.** Respondent Linda Carol Christian, the widow of coal miner James Marshall Christian, filed a claim for benefits under the Black Lung Benefits Act, 30 U.S.C. § 901 *et seq*., against Petitioner Star Services Corporation, insured through Petitioner Birmingham Fire Insurance/AIG. The administrative law judge determined that Respondent Linda Carol Christian was entitled to benefits, and the Benefits Review Board affirmed that decision. Petitioners Star Services Corporation and Birmingham Fire Insurance/AIG now seek our review of the award of benefits. For the reasons set forth below, we **DENY** the petition for review and **AFFIRM** the award of benefits.

## I. BACKGROUND

### A. Statutory Framework

The Black Lung Benefits Act ("BLBA") provides "benefits to coal miners who are totally disabled due to pneumoconiosis and to the surviving dependents of miners whose death was due to such disease." *Shepherd v. Incoal, Inc.*, 915 F.3d 392, 399 (6th Cir. 2019) (cleaned up).

- 1 -

Pneumoconiosis is "a chronic dust disease of the lung and its sequelae, including respiratory and pulmonary impairments, arising out of coal mine employment." 30 U.S.C. § 902(b). "The BLBA provides benefits based on two forms of pneumoconiosis: (1) clinical pneumoconiosis, and (2) legal pneumoconiosis." *Island Creek Coal Co. v. Maynard ex rel. Maynard*, 87 F.4th 802, 807 (6th Cir. 2023). Clinical pneumoconiosis comprises "a specific set of enumerated diseases" recognized by the medical community, whereas "legal pneumoconiosis is a broader and less definite term that refers to any chronic lung disease that was caused in this instance by exposure to coal-mine dust." *Brandywine Explosives & Supply v. Dir., Off. of Workers' Comp. Programs*, 790 F.3d 657, 661 (6th Cir. 2015) (citation modified); *see also* 20 C.F.R. § 718.201(a).

To establish benefits under the BLBA, a surviving spouse must prove that the "miner had pneumoconiosis" that "arose out of coal mine employment" and that "the miner's death was due to pneumoconiosis." 20 C.F.R. § 718.205(a); *Conley v. Nat'l Mines Corp*, 595 F.3d 297, 302 (6th Cir. 2010). If the miner worked in underground coal mining for at least fifteen years and the evidence demonstrates that he had "a totally disabling respiratory or pulmonary impairment" at the time of his death, it is presumed that pneumoconiosis caused the miner's death. 20 C.F.R. § 718.305(b)(1), (c)(2); *Island Creek Coal Co. v. Hunt*, 730 F. App'x 367, 368 (6th Cir. 2018).

Once a claimant establishes this fifteen-year presumption, "the burden shifts to the employer to rebut it." *Maynard ex rel. Maynard*, 87 F.4th at 814. In a survivor's claim, an employer may rebut the presumption in two ways. *Island Creek Coal Co. v. Bryan*, 937 F.3d 738, 757 (6th Cir. 2019); 20 C.F.R. § 718.305(d)(2)(i)–(ii). For the first way, the employer "must show that the miner did not have pneumoconiosis" by proving that the miner had neither legal pneumoconiosis nor clinical pneumoconiosis. *Bryan*, 937 F.3d at 757-58; *see also* 20 C.F.R.

§ 718.305(d)(2)(i).  For the second way, the employer must establish "that no part of the miner's death was caused by pneumoconiosis."  20 C.F.R. § 718.305(d)(2)(ii).

## B.  Factual Background

James Marshall Christian ("Christian") worked underground as a coal miner for 30 years between 1969 and 2001.  Christian most recently worked for Petitioner Star Services Corporation ("Star Services").  From 1965 to 1991, Christian smoked around one package of cigarettes per day.

By 2019, Christian struggled to breathe.  Christian visited the emergency room on multiple occasions to address his respiratory issues, used a CPAP machine at night, and eventually required hospitalization and intubation for an extended period.  Christian died while in the hospital on June 18, 2019.

Respondent Linda Carol Christian ("Claimant") was married to Christian for 53 years and, after his death, filed a claim for benefits under the BLBA on September 23, 2019.  On October 5, 2023, the administrative law judge ("ALJ") awarded benefits on the claim.  The ALJ found that: (1) Christian had over fifteen years of qualifying coal mine employment; (2) Christian "was totally disabled by a respiratory impairment for at least two months before and at the time of his death"; (3) because Christian had over fifteen years of underground coal mine employment and a totally disabling respiratory impairment at the time of his death, Claimant invoked the fifteen-year presumption that Christian's death was due to pneumoconiosis; (4) Star Services failed to rebut that presumption; and (5) Claimant was entitled to benefits under the BLBA on behalf of her husband, Christian.  ALJ Order, Page ID #0118-31.  The Benefits Review Board ("Board") affirmed the ALJ's award of benefits.  Star Services petitioned this Court for review of the ALJ's decision.

## II.   DISCUSSION

### A.  Standard of Review

"In reviewing an appeal from the Board, we review the Board's legal conclusions de novo." *Big Branch Res., Inc. v. Ogle*, 737 F.3d 1063, 1068 (6th Cir. 2013).  Although "we will not vacate the Board's decision unless it has committed a legal error or exceeded its scope of review, 'our review actually focuses on whether the ALJ's decision is supported by substantial evidence.'" *Maynard ex rel. Maynard*, 87 F.4th at 809 (quoting *Island Creek Ky. Mining v. Ramage*, 737 F.3d 1050, 1056 (6th Cir. 2013)).  "An ALJ's decision is supported by substantial evidence if 'such relevant evidence as a reasonable mind might accept as adequate' supports the conclusion." *Id.* (quoting *Ogle*, 737 F.3d 1068-69).  "If the ALJ has adequately explained why he weighed the evidence as he did, then he has satisfied the substantial evidence standard." *Ogle*, 737 F.3d at 1069.  "We do not reweigh the evidence or substitute our judgment for that of the ALJ." *Tenn. Consol. Coal Co. v. Kirk*, 264 F.3d 602, 606 (6th Cir. 2001).  Even if "we would have taken a different view of the evidence were we the trier of facts," we may affirm the ALJ's decision. *Ogle*, 737 F.3d at 1069 (quoting *Ramey v. Kentland Elkhorn Coal Corp.*, 755 F.2d 485, 486 (6th Cir. 1985)).  "A remand or reversal is only appropriate when the ALJ fails to consider all of the evidence under the proper legal standard or there is insufficient evidence to support the ALJ's finding." *McCain v. Dir., Off. of Workers Comp. Programs*, 58 F. App'x 184, 201 (6th Cir. 2003).

### B.  Analysis

#### 1.  Invocation of the Fifteen-Year Presumption

Star Services argues that the ALJ erred in finding that Christian was totally disabled and thus that the fifteen-year presumption was not properly invoked.  Star Services does not contest that Christian had at least fifteen years of underground coal mine employment.

As stated above, a miner who worked in underground coal mining for at least fifteen years and who had "a totally disabling respiratory or pulmonary impairment" at the time of his death is entitled to a presumption that pneumoconiosis caused his death. 20 C.F.R. § 718.305(b)(1), (c)(2); *see also Hunt*, 730 F. App'x at 368. A miner is "considered totally disabled if the miner has a pulmonary or respiratory impairment" that "standing alone" prevented the miner from "performing his . . . usual coal mine work" and from engaging in comparable "gainful employment." *Advent Mining LLC v. Davis*, 697 F. App'x 862, 866-67 (6th Cir. 2017); 20 C.F.R. § 718.204(b)(1). A "claimant can establish total disability with qualifying pulmonary function tests; qualifying arterial blood-gas tests; evidence that the miner is 'suffering from cor pulmonale with right-sided congestive heart failure'; or via 'a physician exercising reasoned medical judgment.'" *Maynard ex rel Maynard*, 87 F.4th at 810 (quoting 20 C.F.R. § 718.204(b)(2)).

The ALJ found that Christian was "incapable of performing the heavy labor required by his usual coal mine work" and was "totally disabled by a respiratory impairment for at least two months before and at the time of his death." ALJ Order, Page ID #0123. The ALJ based this conclusion on Dr. Jarboe's and other treating physician's findings that Christian "had severe hypoxemia and respiratory failure that required frequent hospitalization in the months before his death." *Id.* In particular, the ALJ explained that although Dr. Jarboe did not specifically state whether Christian was totally disabled, Dr. Jarboe opined that Christian "had severe hypoxemia and respiratory failure, which led to his final hospitalization" and that Christian "was in respiratory failure at the time of his demise." *Id.* at 0121 (quotations omitted). The ALJ highlighted that these findings were consistent with Christian's autopsy, which provided that his "death was likely due to respiratory failure," and his death certificate, which stated that he "died of acute respiratory failure." *Id.* at 0123.

Star Services contends that the ALJ erred in finding total disability because Dr. Jarboe's opinion "establishes [that] Christian did not have a totally disabling pulmonary impairment." Pet'rs Br. at 12. We disagree. Dr. Jarboe noted that Christian was admitted to the hospital on May 29, 2019 "with chest pain and severe shortness of breath and was found to have a myocardial infarction and severe hypoxemia requiring intubation." Dr. Jarboe's Op., Page ID # 0103. Dr. Jarboe further noted that Christian had "extensive hospitalization" from April 14 to May 10, 2019 "for sepsis due to bacterial pneumonia complicated by acute respiratory distress syndrome . . . and chronic respiratory failure." *Id.* Dr. Jarboe stated that, after Christian's condition temporarily improved and he returned home for five days, Christian was readmitted to the hospital with "chest pain and shortness of breath." *Id.* Dr. Jarboe stated that Christian "was transferred back to the ICU" on June 8, 2019 and "was intubated" again on June 10 because of "his increased oxygen requirements." *Id.* at 0105. Dr. Jarboe noted that after Christian's "respiratory failure continued to progress and he was intubated and paralyzed," Christian "was terminally extubated" on June 18 and then pronounced dead. *Id.* Dr. Jarboe opined that the "illness that led [] Christian to his final hospitalization was a non-ST-elevation myocardial infarction associated with hypoxemia (respiratory failure)." *Id.* at 0107. Thus, in describing how Christian required frequent hospitalizations due to respiratory failure and was unable to breathe properly without intubation, Dr. Jarboe's opinion conveyed that Christian could not work in coal mining or comparable employment and was therefore totally disabled. *See* 20 C.F.R. § 718.204(b)(1).

And, as highlighted by the ALJ, the treatment records, autopsy results, and death certificate all verify Dr. Jarboe's findings that Christian required frequent hospitalizations and intubation due to severe respiratory issues in the time leading up to and during his death. Progress notes from treating physicians state that between April and June 2019, Christian was hospitalized due to

"respiratory failure" and required "intubation" to breathe. *See*, *e.g.*, Treatment Records, Page ID #0020, 0022, 0026. Indeed, records from a treating physician dated June 12, 2019 state that Christian was "sedated and intubated" and "[s]everely disabled." *Id.* at 0013. The autopsy results yielded that Christian had pneumonia involving "infection and damage to the lung tissue throughout both lungs," "damage to the small bronchial tubes in the lungs," "[t]iny blood clots in the small arteries of the lungs," and "mild emphysema" (a chronic lung condition). Autopsy Results, Page ID #0005. And the death certificate lists Christian's cause of death as "acute respiratory failure," along with "sepsis" and "pneumonia." Death Certificate, Page ID #0004.

Substantial evidence therefore supported the ALJ's conclusion that Christian was totally disabled in the two months leading up to and at the time of his death. Dr. Jarboe's opinion, as supported by the treatment records, autopsy results, and death certificate, provides "relevant evidence as a reasonable mind might accept as adequate" to support the ALJ's conclusion that Christian was totally disabled at the time of his death. *Maynard ex rel. Maynard*, 87 F.4th at 809 (quoting *Ogle*, 737 F.3d 1068-69).

Star Services argues that the ALJ's finding of total disability was not "based upon the reasoned medical opinion of a physician, but upon his own interpretation of the medical treatment records." Pet'rs Br. at 14. But the ALJ did base his finding of total disability on Dr. Jarboe's medical opinion. Even though Dr. Jarboe's opinion, as acknowledged by the ALJ, does not specifically state whether Christian was totally disabled, a "medical opinion need not be phrased in terms of 'total disability' before total disability can be established." *Patridge v. Dir., Off. of Workers' Comp. Programs*, 878 F.2d 382, 1989 WL 72922, at *3 (6th Cir. 1989) (per curiam) (table). Rather, "[t]o constitute substantial evidence of total disability due to a respiratory impairment, a physician's report must describe a miner as being totally disabled, or describe the

physical limitations a miner's respiratory impairment imposes upon him in a manner that gives rise to the inference that with such impairments, the miner is totally disabled." *New v. Dir., Off. of Workers' Comp. Programs*, 875 F.2d 866, 1989 WL 59276, at *3 (6th Cir. 1989) (per curiam) (table). It was entirely reasonable for the ALJ to infer that, given Dr. Jarboe's opinion highlighting how Christian required frequent hospitalizations and intubation, Christian was "incapable of performing the heavy labor required by his usual coal mine work" and was "totally disabled by a respiratory impairment for at least two months before and at the time of his death." ALJ Order, Page ID #0123; *see also* 20 C.F.R. § 718.204(b)(1).

Star Services next argues that the ALJ erred in finding total disability because Christian experienced only an acute respiratory condition and total disability requires a chronic respiratory condition. Regardless of whether Christian's respiratory condition can be accurately labeled chronic or acute, there is no requirement in the BLBA or the implementing regulations that a respiratory condition be chronic to qualify as totally disabling. *See Consolidation Coal Co. v. Dir., Off. of Workers' Comp. Programs*, 129 F.4th 409, 414 (7th Cir. 2025) ("Neither the statute nor the regulations say that the disabling impairment must be 'chronic' or, for that matter, draw any distinction between acute and chronic medical conditions. We 'resist reading words or elements into a statute that do not appear on its face.'" (quoting *Bates v. United States*, 522 U.S. 23, 29 (1997))). Rather, to qualify as "totally disabled" a miner must have "a pulmonary or respiratory impairment" that "standing alone" prevented the miner from "performing his . . . usual coal mine work" and from engaging in comparable "gainful employment."[1] *Advent Mining LLC*, 697 F.

---

[1] It is true that elsewhere in the statute and implementing regulations pneumoconiosis is defined as a "chronic dust disease of the lung." 30 U.S.C. § 902(b); 20 C.F.R. § 718.201(a). But, to invoke the fifteen-year presumption under 20 C.F.R. § 718.305(b)(1), the claimant must establish that the miner had a totally disabling respiratory condition, as set forth in 20 C.F.R. § 718.204(b)(1), not that the miner had pneumoconiosis.

App'x at 866-67; 20 C.F.R. § 718.204(b)(1). And substantial evidence supported such a finding by the ALJ in this case.

The Board, therefore, did not err in affirming the ALJ's conclusion that Claimant properly invoked the fifteen-year presumption.

### 2. Rebuttal of the Fifteen-Year Presumption

Star Services argues that Christian had neither legal pneumoconiosis nor clinical pneumoconiosis and thus that the ALJ erred in concluding that Star Services did not rebut the fifteen-year presumption.

As stated above, once a claimant invokes the fifteen-year presumption, "the burden shifts to the employer to rebut it." *Maynard ex rel. Maynard*, 87 F.4th at 814. The employer may rebut the presumption in two ways: (1) the employer "must show that the miner did not have pneumoconiosis" by proving that the miner had neither legal pneumoconiosis nor clinical pneumoconiosis; or (2) the employer must establish "that no part of the miner's death was caused by pneumoconiosis." *Bryan*, 937 F.3d at 757-58; 20 C.F.R. § 718.305(d)(2)(i)–(ii).

As to the first way for rebuttal of the fifteen-year presumption, the ALJ found that Star Services failed to prove that Christian did not have legal pneumoconiosis and clinical pneumoconiosis. Regarding legal pneumoconiosis, the ALJ highlighted that the only indication in the record that Christian affirmatively did not have legal pneumoconiosis was Dr. Jarboe's opinion. As noted by the ALJ, Dr. Jarboe opined that Christian's "coal mining employment, and specifically his history of exposure to coal mining dust, did not contribute to or hasten his final hospitalization or any illness or condition." ALJ Order, Page ID #0129 (quoting Dr. Jarboe's Op., Page ID #0107). The ALJ discredited Dr. Jarboe's opinion regarding legal pneumoconiosis, reasoning that Dr. Jarboe had not sufficiently explained "how he determined that [Christian's]

exposure to respirable coal mine dust did not contribute to [Christian's] total respiratory disability at the time of [] his death." *Id.* at 0130. The ALJ noted that "Dr. Jarboe does not dispute that [Christian] had emphysema" but "did not sufficiently explain how he determined that [Christian's] history of exposure to respirable coal mine dust did not contribute to his emphysema." *Id.* The ALJ also noted a discrepancy between Dr. Jarboe's opinion on the cause of Christian's hypoxemia and the records from treating physicians: Although Dr. Jarboe concluded that Christian's "severe hypoxemia was caused by pulmonary edema and an associated pneumonia," Dr. Jarboe's Op., Page ID #0107, treatment records dated June 12, 2019 noted uncertainty regarding "what is causing the hypoxia" and stated that Claimant sought to "continue full support/full code for now to give the team time to find underlying cause," Treatment Records, Page ID #0013. The ALJ concluded that because "Dr. Jarboe's opinion on legal pneumoconiosis is not sufficiently reasoned or documented," Star Services failed to rebut the fifteen-year presumption that Christian had legal pneumoconiosis. ALJ Order, Page ID #0130.

The ALJ's conclusion that Star Services failed to carry its burden of disproving legal pneumoconiosis is supported by substantial evidence. The only evidence provided by Star Services that affirmatively supports its position that Christian did not suffer legal pneumoconiosis is Dr. Jarboe's opinion. But the ALJ acted within his discretion in discrediting Dr. Jarboe's opinion on whether coal mine employment caused Christian's respiratory issues and death. "As the finder-of-fact, it is the role of the ALJ to weigh the evidence and determine whether the opinions of medical experts are well-reasoned." *Clonch v. S. Ohio Coal Co.*, No. 05-3133, 2006 WL 3409880, at *5 (6th Cir. Nov. 27, 2006). The ALJ may discredit a medical opinion "for instance, when the opinion does not indicate what factors were relied on, . . . when the doctor fails to explain the conclusion reached, or where there are inconsistencies." *Id.* And, in discrediting Dr. Jarboe's

opinion regarding legal pneumoconiosis, the ALJ "adequately explained why he weighed the evidence as he did." *Ogle*, 737 F.3d at 1069.

Star Services argues that the "evidence fails to establish the presence of legal pneumoconiosis," Pet'rs Br. at 11, but because Claimant invoked the fifteen-year presumption, the burden is on Star Services to disprove legal pneumoconiosis, not on Claimant to prove legal pneumoconiosis. *Maynard ex rel. Maynard*, 87 F.4th at 814; *see also Consol of Ky., Inc. v. Eskut*, 734 F. App'x 964, 968 (6th Cir. 2018) ("At bottom, rebutting the presumption of legal pneumoconiosis requires that the evidence affirmatively proved the absence of pneumoconiosis." (quotations omitted)). Specifically, Star Services "must prove that 'coal-mine exposure had at most only a *de minimis* effect on [the miner's] lung impairment." *Ky. Prince Mining Co. v. Dir., Off. of Workers' Comp. Programs*, 800 F. App'x 410, 412-13 (6th Cir. 2020) (quoting *Island Creek Coal Co. v. Young*, 947 F.3d 399, 407 (6th Cir. 2020)). Star Services has not done so. Instead, Star Services invites this Court to reconsider the autopsy reports, treatment records, and Dr. Jarboe's opinion, but we "do not reweigh the evidence or substitute our judgment for that of the ALJ." *Kirk*, 264 F.3d at 606.

Since substantial evidence supported the ALJ's finding that Star Services did not disprove legal pneumoconiosis, we need not consider the issue of clinical pneumoconiosis. *See Island Creek Ky. Mining v. Gamblin*, No. 22-3138, 2023 WL 2733530, at *3 (6th Cir. Mar. 31, 2023) ("Because . . . we agree with the Board that the ALJ's credibility findings are supported by substantial evidence with respect to legal pneumoconiosis, we decline to address its clinical pneumoconiosis argument."). To rebut the fifteen-year presumption by disproving pneumoconiosis, Star Services had "to disprove *both* clinical *and* legal pneumoconiosis." *See Consol of Ky., Inc. v. Madden*, 829 F. App'x 90, 99 (6th Cir. 2020).

As to the second way for rebuttal of the fifteen-year presumption, the ALJ concluded that Star Services "failed to establish no part of [Christian's] death was caused by pneumoconiosis." ALJ Order, Page ID #0131. In so finding, the ALJ discredited the only evidence in support of Star Services' position, which was Dr. Jarboe's opinion that pneumoconiosis did not cause Christian's death. To this end, Star Services does not develop any meaningful argument on appeal. Star Services argues only that the ALJ "erred by finding that [Christian's] death was caused by pneumoconiosis by applying the presumption that the claimant was totally disabled, as total disability was not established." Pet'rs Br. at 16. But, again, given that the fifteen-year presumption was properly invoked, the burden lies with Star Services, not Claimant, to establish "that no part of [Christian's] death was caused by pneumoconiosis." *See* 20 C.F.R. § 718.305(d)(2)(ii); *see also Maynard ex rel. Maynard*, 87 F.4th at 814. Rather than contest the evidence supporting the ALJ's finding of total disability as Star Services does on appeal, to rebut the second way, Star Services had to "completely rule out pneumoconiosis as contributing" to Christian's death. *Ky. Prince Mining Co.*, F. App'x at 413. Star Services has not done so.

Thus, the Board did not err in affirming the ALJ's conclusion that Star Services failed to rebut the fifteen-year presumption.

## III. CONCLUSION

For the reasons set forth above, this Court **DENIES** the petition for review and **AFFIRMS** the award of benefits.